UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FIORDALIZA TINEO,

                                   Plaintiff,

             -against-

BOB'S DISCOUNT FURNITURE, LLC, BEN PILLAI,
and RALPH BRIGHAM,

                                Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No.: _____

Plaintiff Fiordaliza Tineo ("Ms. Tineo") (hereinafter "Plaintiff"), by her attorneys, Gerstman Schwartz, LLP, complaining of the Defendants Bob's Discount Furniture, LLC ("Bob's Furniture" or "Corporate Defendant"), Ben Pillai ("Pillai"), and Ralph Brigham ("Brigham"), (hereinafter, collectively, "Individual Defendants") (Individual Defendants and Corporate Defendant may be referred to collectively as "Defendants"), set forth and allege as follows:

## JURISDICTION & VENUE

1. This Court has original subject matter jurisdiction over the Title VII claims under 28 U.S.C. § 1331 and 1343 because they arise under the laws of the United States and are brought to recover damages for violations of civil rights.

2. This Court has supplemental subject matter jurisdiction over the State claims under 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

1

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3) because the Plaintiff reside and can be found in this district.

## ADMINISTRATIVE PREREQUISITES

4. The Plaintiff has satisfied all administrative prerequisites to commencing this action.

5. Ms. Tineo timely filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 11, 2019.

6. In a letter, dated November 1, 2019, the EEOC acknowledged receipt of the above EEOC charge of discrimination.

7. Then, the EEOC issued Ms. Tineo a right to sue letter dated August 7, 2020.

## PARTIES

A. **The Plaintiff**

8. At all times relevant hereto, Plaintiff Ms. Tineo is and was a female employee of Defendant Bob's Furniture holding the position of "salesperson."

9. At all times relevant hereto, Plaintiff Ms. Tineo is and was a resident of Suffolk County, New York.

B. **The Defendants**

10. At all times relevant hereto, Defendant Bob's Furniture is and was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Massachusetts, with a principle place of business located in the Bronx, New York.

11. At all times relevant hereto, Defendant Bob's Furniture was and is a foreign limited liability company duly authorized to do business, and at all times hereinafter mentioned, doing business in the State of New York.

12. Bob's Furniture is an American furniture store with 121 stores in 18 states and is ranked 12th in sales among United States furniture stores according to *Furniture Today*'s list of Top 100 Furniture Stores.

13. At all times relevant hereto, Defendant Ben Pillai is employed by Bob's Furniture and supervised the Plaintiff and had the power to hire, fire, set schedules, direct corporate policy, and make other employment decisions affecting Plaintiff's terms and conditions of employment, and is also an "aider and abettor" under New York State Human Rights Law.

14. Pillai is personally involved in day-to-day employment decisions concerning Bob's Furniture.

15. Defendant Brigham was employed by Bob's Furniture as a Salesperson. He is also an "aider and abettor" under New York State Human Rights Law.

16. Brigham was personally involved in day-to-day employment decisions concerning Bob's Furniture.

## FACTUAL ALLEGATIONS

17. In December 2013, Ms. Tineo began working for Bob's Furniture at one of its branches, located at 1999 Broadhollow Rd., Farmingdale, NY 11735 as a salesperson.

18. From the moment Ms. Tineo started working for Bob's Furniture, Ms. Tineo displayed an exemplary performance and never had any issues with fellow coworkers or staff throughout her entire tenure at Bob's Furniture.

19. Ms. Tineo—a top producing and experienced Sales Representatives—came to work for Bob's expecting a professional and a safe working environment—something all employees deserve. Instead, professionalism gave way to physical groping of intimate body parts,

inappropriate gestures, and sexually charged comments and actions in private, before fellow staff, and in front of customers.

20. Instead of intervening, Bob's Furniture attempted to cover up Defendants' conduct, retaliating against the Plaintiff's good faith efforts to complain to management.

21. Ms. Tineo began feeling increasingly uncomfortable by the conduct of another Bob's Furniture salesperson, Defendant Ralph Brigham ("Brigham"), whose sexual harassment conduct and abuse of authority began immediately upon his employment as a Salesperson at Bob's Furniture, in or around November 2018. As such, Defendant Brigham's sexual harassment and abuse of authority was repeatedly put on public display for all to see.

22. Beginning in November 2018, Defendant Brigham began making wholly inappropriate sexual innuendoes directed at Ms. Tineo.

23. During Defendant's first month at Bob's Furniture, Defendant Brigham took Ms. Tineo's phone to the restroom; after several hours of thinking that her phone was lost, Defendant Brigham returned Ms. Tineo's phone, covered in a used napkin, and communicated to her that he brought her phone to the bathroom because "her picture was so sexy."

24. On another occasion, during or shortly after Defendant's first month at Bob's Furniture, Defendant Brigham grabbed Ms. Tineo's phone and pretended to lick it in front of her.

25. On yet another notable incident, Defendant Brigham sat in Ms. Tineo's chair and stated, "Ooo so warm, I love it." Ms. Tineo communicated to Defendant Brigham that his actions were severely unwelcomed and inappropriate, and expressed that same made her extremely uncomfortable.

26. Additionally, on numerous occasions, Defendant Brigham would stand near a communal work computer and wait for Plaintiff Tineo to bend down to use it. Once Plaintiff would do so, Defendant Brigham, staring at Plaintiff's chest would say, "Perfect size."

27. On or about January 2019, Defendant Brigham caressed and groped Plaintiff's buttocks, squeezing tightly for multiple seconds, exclaiming "oh yeah!" This incident occurred within visual proximity of multiple security cameras.

28. Thereafter, Ms. Tineo took every measure to avoid speaking to and being around Defendant Brigham. Despite Ms. Tineo and other female employees' complaints to Defendant Pillai about Defendant Brigham's inappropriate behavior, Defendant Pillai took no further action.

29. In addition to subjecting Ms. Tineo to severely unwelcomed and inappropriate harassment, Defendant Brigham also subjected other female staff members to the same or similar type of harassment. For instance, on one notable incident, Defendant Brigham told Crystal Arbouin ("Ms. Arbouin") that he wanted to "choke her during sex." Disturbed by these comments, Ms. Arbouin tried to avoid Brigham. Moreover, beginning in March 2019, Defendant Brigham persistently made sexual remarks toward his subordinate, Laura Lorenzo ("Ms. Lorenzo"), including descriptions of his genitals and descriptions of sexual acts he fantasized about performing on her.

30. Brigham often became enraged and jealous, often harassing Ms. Arbouin about which male coworkers she spoke to and why. A mere sampling of this conduct is as follows:

    a. In one incident, Brigham yelled at Ms. Arbouin and told her to stay away from Vinny Sammarpino, a coworker, stating that she should stay with him instead.

    b. During a later shift, Brigham saw Ms. Arbouin speaking to Mr. Sammarpino again and yelled at them both to stop speaking to each other. When Ms. Arbouin told him it was none of his business, a verbal confrontation ensued.

    c. During one particular Sunday shift, Brigham approached Ms. Arbouin while she was on the sales floor and aggressively said, "You just going to fucking talk to Roger all day?"

    d. The following week, during a conversation, Mr. Sammarpino made a comment and Ms. Arbouin laughed. When Ms. Arbouin laughed, Brigham called her an "idiot" and "a kid." Brigham then said "what would you know about a career, you'll never have one." Ms. Arbouin told Brigham to stop talking to her, to which he responded by calling her a "ghetto queen," and telling her that he was almost done paying off his mortgage but she would never own a home.

31. Significantly, *the Company was first informed of Defendant Brigham's continuous pattern of sexual harassment in November 2018* when Ms. Tineo first reported this conduct to the store's manager, Defendant Ben Pillai. Yet, Defendant Pillai deliberately concealed Ms. Tineo's numerous complaints from the Company's Human Resources ("HR") department, as well as the litany of complaints made by sundry employees including Ms. Arbouin (beginning in January 2019) and Ms. Lorenzo (beginning in March 2019).

32. Upon information and belief, Defendant Pillai, by deliberately covering for Defendant Brigham, telegraphed to Defendant Brigham that, for all intents and purposes, he was untouchable and had carte blanche to act incorrigibly and with complete impunity.

33. Additionally, upon information and belief, Defendant Pillai actively hindered the Company's ability to investigate these allegations by, among other acts, discarding the video recording of Defendant Brigham's sexual assault of Ms. Arbouin.

34. Adding insult to injury, Defendant Pillai responded to Plaintiff's complaints with hostility and retaliatory conduct, publicly accusing Ms. Tineo, Ms. Arbouin, and Ms. Lorenzo of being liars on multiple occasions and punishing them in various ways throughout the workday.

35. In every respect then, Defendant Pillai not only contributed to establishing a hostile work environment, he aided and abetted the offensive behaviors and retaliated against the victims.

36. When the Company's HR department was again notified of Defendant Brigham's conduct in March 2019,[1] HR likewise responded with hostility and did nothing to stop the subsequent onslaught of retaliatory conduct perpetrated by Defendant Pillai.

37. For example, in March 2019, immediately after HR was (once again) notified of Defendant Brigham's sexual harassment, Ms. Arbouin was penalized for failing to meet purported sales goals on the Company's "Goof" insurance by 0.2%, despite the fact that this alleged shortfall had occurred while Ms. Arbouin was still within the Company's grace period provided to new employees.

38. In yet another example, in March 2019, although the Company granted Ms. Arbouin's request to utilize her paid time off for a "mental health" vacation to help cope with the trauma and anxiety caused by Defendant Brigham's sexual assault and harassment, Defendant Pillai subsequently revoked the Company's approval which forced Ms. Arbouin back to work before her vacation even began.

---

[1] It is presumed that Mr. Pillai deep-sixed previous complaints but discovery will undoubtedly divulge whether HR had earlier notice.

39. Remarkably, it was not until the Plaintiff retained counsel, who formally notified the Company of its representation in July 2019, that they finally took ameliorative action and terminated Defendant Brigham's employment. While welcome, this merely highlights the Company's systemic failures.

40. At bottom, the Company discriminated against the Plaintiff, maintained a toxic culture and hostile work environment, and retaliated against the Plaintiff for complaining about same. Further, the Company negligently hired, supervised, and *retained* Defendant Brigham insofar as they employed him with full knowledge of his reputation for inappropriate sexual conduct, poor judgment, addictive propensities and *lack of impulse control*.

41. Similarly, the Company negligently hired, supervised, and retained Defendant Pillai insofar as he enabled and encouraged a hostile work environment predicated on sexual harassment. To date, the Company continues to employ Defendant Pillai.

42. Upon information and belief, no mechanism has been established to prevent such sexual harassment from happening again. Indeed, up until the COVID-19 pandemic, despite the myriad of complaints against Defendant Pillai and Bob Furniture's notice of same, Ms. Tineo was forced to work under his supervision.

43. Plaintiff has ample evidence to prove these claims at trial.

## FIRST CAUSE OF ACTION

## Title VII – Sexual Harassment

44. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

45. The Defendants intentionally discriminated against the Plaintiff by creating and maintaining a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

46. The sexually hostile work environment created by the Defendants was severe, pervasive, and a part of a pattern or practice of harassment against the Plaintiff.

47. The hostile working environment altered the Plaintiff's conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

48. The Plaintiff complained about the sexual harassment to which she was subjected. But the Defendants took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior that was directed towards the Plaintiff.

49. Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiff's employment.

50. The Corporate Defendant, through and together with the Individual Defendants, participated in the conduct giving rise to the harassment and hostile work environment based on the Plaintiff's sex that altered the terms and conditions of her employment.

51. As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory treatment of the Plaintiff, she has suffered and continues to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

52. By reason of the sexual harassment perpetrated by the Defendants, the Plaintiff is entitled to all damages available to her under Title VII.

## SECOND CAUSE OF ACTION

**New York State Human Rights Law – Sexual Harassment**

53. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

54. The Defendants intentionally discriminated against the Plaintiff by creating and maintaining a sexually hostile work environment in violation of New York State Executive Law § 296 *et seq*.

55. The sexually hostile work environment created by the Defendants was severe, pervasive, and a part of a pattern or practice of harassment against the Plaintiff.

56. The hostile working environment altered the Plaintiff's conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

57. The Plaintiff complained about the sexual harassment to which she was subjected. But the Defendants took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior that was directed toward the Plaintiff.

58. Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiff's employment.

59. The Corporate Defendant, through and together with the Individual Defendants, participated in the conduct giving rise to the harassment and hostile work environment based on the Plaintiff's sex that altered the terms and conditions of her employment.

60. The Individual Defendants aided, abetted, incited, compelled, and/or coerced a hostile work environment based on the Plaintiff's sex by directly and purposefully participating in conduct giving rise to or facilitating the unlawful harassment and hostile work environment prohibited under New York State Human Rights Law. *See* N.Y. Exec. Law § 290 *et seq*.

61. The Individual Defendants aided, abetted, incited, compelled, and/or coerced a hostile work environment based on the Plaintiff's sex by failing to promptly investigate or take appropriate remedial measures despite being informed about the existence of discriminatory conduct.

62. Further, the Defendants condoned the acts of sexual harassment and hostile working environment detailed above in violation of New York State Human Rights Law. *See* N.Y. Exec. Law § 290 *et seq*.

63. As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory treatment of the Plaintiff, she has suffered and continues to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

64. By reason of the sexual harassment perpetrated by the Defendants, the Plaintiff is entitled to all damages available to her under New York State Human Rights Law.

### THIRD CAUSE OF ACTION

#### Title VII – Retaliation

65. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

66. The Plaintiff complained about the sexually hostile working environment to which she was subjected.

67. The issues raised by the Plaintiff to the Defendants constitute colorable violations of Title VII's prohibitions concerning discrimination on the basis of sex.

68. The Defendants retaliated against the Plaintiff for engaging in protected activities of reporting and opposing the sexually hostile working environment to which she was being subjected.

69. In violation of Title VII, Defendants retaliated against the Plaintiff in a way that interfered with their terms and conditions of employment.

70. The Defendants' retaliatory and discriminatory act or acts would be reasonably likely to deter a person from engaging in protected activity.

71. The Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiff's employment.

72. The Corporate Defendant, through and together with the Individual Defendants, participated in the conduct giving rise to the retaliation based on the Plaintiff engaging in protected activity.

73. As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment of the Plaintiff, she has suffered and continues to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

74. By reason of the retaliation perpetrated by Defendants, the Plaintiff is entitled to all damages available to her under Title VII.

## FOURTH CAUSE OF ACTION

### New York State Human Rights Law – Retaliation

75. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

76. The Plaintiff complained about the sexually hostile working environment to which she was subjected.

77. The issues raised by the Plaintiff to the Defendants constitute colorable violations of New York State Human Rights Law's prohibitions concerning discrimination on the basis of sex.

78. The Defendants retaliated against the Plaintiff for engaging in protected activities of reporting and opposing the sexually hostile working environment to which she was being subjected.

79. In violation of New York Executive Law § 296, Defendants retaliated against the Plaintiff in a way that interfered with their terms and conditions of employment.

80. The Defendants' retaliatory and discriminatory act or acts would be reasonably likely to deter a person from engaging in protected activity.

81. The Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiff's employment.

82. The Corporate Defendant, through and together with the Individual Defendants, participated in the conduct giving rise to the retaliation based on the Plaintiff engaging in protected activity.

83. The Individual Defendants aided, abetted, incited, compelled, and/or coerced the retaliation based on the Plaintiff engaging in protected activity by directly and purposefully participating in conduct giving rise to unlawful retaliation.

84. The Individual Defendants aided, abetted, incited, compelled, and/or coerced the retaliation based on the Plaintiff's complaints of the hostile work environment maintained by Defendants by failing to promptly investigate or take appropriate remedial measures despite being informed about the existence of the said conduct.

85. Further, the Individual Defendants condoned the acts of sexual harassment, hostile working environment, and retaliation detailed above in violation of New York Executive Law § 296.

86. As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment of the Plaintiff, she has suffered and continues to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

87. By reason of the retaliation perpetrated by Defendants, the Plaintiff is entitled to all damages available to her under New York State Human Rights Law.

## FIFTH CAUSE OF ACTION

### Negligent Hiring, Supervision, & Retention

88. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

89. As a result of Defendants' gross negligence, the Plaintiff experienced, *inter alia*, sexual harassment, retaliation, physical harm, anxiety, and emotional distress.

90. These Defendants placed their employees in a position to cause foreseeable harm, harm that the Plaintiff would have been spared had these Defendants taken reasonable care in making decisions concerning the hiring, supervision, and retention of Brigham.

91. These Defendants knew, or should have known, of Brigham's propensity for the abovementioned conduct that caused the injuries of the Plaintiff.

92. These Defendants, as outlined above, hired Brigham either knowing of his criminal and sexually harassing history or under circumstances through which they should have known of the same.

93. As a direct and proximate result of the aforementioned conduct, perpetrated by the Defendants, Plaintiff was damaged and suffered mental and emotional harm, anguish, anxiety, and humiliation.

94. By reason of these Defendants' failure to exercise due care in the hiring, supervision, and retention of employees, Plaintiff suffered sexual harassment and retaliation. Therefore, Plaintiff is entitled to all damages permitted by law.

## SIXTH CAUSE OF ACTION

### Title VII – Wrongful Termination

95. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

96. Plaintiff was constructively discharged based on her sex when she was subjected to the Defendants sexual harassment/hostile working environment and retaliation, despite the Defendants' knowledge about such unlawful behavior, in violation of Title VII, 42 U.S.C. § 2000e *et seq*.

97. The working conditions resulting from the Defendants' sexual harassment/hostile working environment and retaliation were so intolerable that a reasonable person in the respective employee's situation, such as the Plaintiff, would have felt compelled to resign.

98. As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment, which led to the constructive discharge of the Plaintiff, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

99. By reason of the retaliation perpetrated by Defendants, the Plaintiff is entitled to all damages available to her under Title VII.

## SEVENTH CAUSE OF ACTION
### New York State Human Rights Law – Constructive Discharge

100. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

101. Plaintiff was constructively discharged based on her sex when she was subjected to the Defendants sexual harassment/hostile working environment and retaliation, despite the Defendants' knowledge about such unlawful behavior, in violation of New York State Human Rights Law § 296 *et seq*.

102. The working conditions resulting from the Defendants' sexual harassment/hostile working environment and retaliation were so intolerable that a reasonable person in the respective employee's situation, such as the Plaintiff, would have felt compelled to resign.

103. As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment, which led to the constructive discharge of the Plaintiff, the Plaintiff have suffered and continues to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

104. By reason of the retaliation perpetrated by Defendants, the Plaintiff is entitled to all damages available to them under New York State Human Rights Law.

## EIGHTH CAUSE OF ACTION
## ASSAULT AND BATTERY

105. Plaintiff repeat and reiterates each and every allegation above as though fully set forth herein.

106. Defendants did place Plaintiff in fear of imminent and harmful contact by engaging aggressive acts of verbal castigation, the making of threatening and hostile gestures, unwanted sexual advances, and coerced and unwelcomed physical contact.

107. As a result of the assaults and batteries alleged herein, Plaintiff sustained physical and emotional damages.

108. By reason of the conduct perpetrated by Defendants, the Plaintiff is entitled to all damages available to her under New York State Law.

## PRAYER FOR RELIEF

**WHEREFORE**, upon all of the facts, allegations, and causes of action as set forth and alleged herein, Plaintiff respectfully request that this Court:

A. Grant judgment against Defendants as to each and every cause of action herein alleged;

B. Grant judgment declaring that the actions and practices of Defendants violated the Plaintiff's civil rights under each cause of action alleged herein and enjoining such violations;

C. Grant an order awarding Plaintiff damages in an amount to be determined at trial, together with interest and the costs and disbursements of this action, plus reasonable attorneys' fees, punitive damages sufficient to punish and deter the continuation of

    Defendants' unlawful employment practices, as well as any other damages permitted to be recovered by law pursuant to the above causes of action; and

D. Grant any such further relief as the Court deems just, proper, and equitable.

## **JURY DEMAND**

Plaintiff hereby demand a trial by jury as to all issues so triable.

Dated: November 2, 2020
    Garden City, New York

             **GERSTMAN SCHWARTZ, LLP**
            By: */s/ Randy E. Kleinman*
              Randy E. Kleinman, Esq.
              1399 Franklin Avenue, Suite 200
              Garden City, New York 11530
              Tel. No.: (516) 880 – 8170
              rkleinman@GerstmanSchwartz.com
              *Attorneys for Plaintiff*